**Patricia Stephenson EICHENSEER, Plaintiff–Appellee,**

v.

**RESERVE LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 88–4421.

United States Court of Appeals, Fifth Circuit.

Sept. 5, 1989.

L.F. Sams, Jr., John S. Hill, and Donna M. Barnes, Tupelo, Miss., for defendant-appellant.

Dewitt T. Hicks, Jr., and Thomas L. Kesler, Columbus, Miss., for plaintiff-appellee.

Before RUBIN, POLITZ and JOHNSON, Circuit Judges:

JOHNSON, Circuit Judge:

In the instant diversity action, appellant Reserve Life Insurance Company appeals a final judgment in favor of appellee Patricia Eichenseer on the claim of Eichenseer alleging bad faith and gross negligence on the part of Reserve Life in denying Eichenseer health insurance benefits under a major medical insurance policy issued by Reserve Life. Following a bench trial, the district court awarded Eichenseer $1,000 in extra contractual damages and $500,000 in punitive damages. 682 F.Supp. 1355. Persuaded that the judgment of the district court is consistent with the guarantees enumerated in the United States Constitution, as well as Mississippi law in this area, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On January 5, 1983, appellant Reserve Life Insurance Company issued a major medical insurance policy to appellee Patricia Eichenseer. In applying for the above policy, Eichenseer informed Reserve Life insurance agent Sue Wilson that her regular physician was Dr. L.R. Murphree, but that she had not visited Dr. Murphree in recent months. Further, as part of her application for medical insurance with Reserve Life, Eichenseer executed a medical release which authorized Reserve Life to contact Dr. Murphree or any other doctor of Eichenseer to verify the condition of her health. Sue Wilson subsequently contacted Dr. Murphree on behalf of Reserve Life to verify the health condition of Eichenseer, whereupon Dr. Murphree informed Wilson that "everything was fine." After receiving the above information from Dr. Murphree, Wilson collected the appropriate premium payment from Eichenseer and thereafter, informed Eichenseer that she was insured.

Eighteen days after the effective date of the Reserve Life medical insurance policy, Eichenseer was admitted to the hospital by Dr. Murphree for severe abdominal pain. On the hospital admission sheet, Dr. Murphree noted the following:

*Ch[i]ef Complaint:* Pain [i]n the lower abdomen.

present illness: The pain has been present in the lower abdomen in period *for the last 2–3 years.* This attack started about three days ago and has become progressively worse. She has occasional headaches. The head is hurting now, some sore throat. Occasional cough which she contributes to smoking. Appetite is terrific. Bowels have not been moving well in the last few days. Nicturia 2–3 times at night.

(emphasis added). Eichenseer remained in the hospital for a total of sixteen days due to her condition. During the course of her stay, a sonogram was performed revealing the possible presence of an adnexal cyst, endometriosis, or pelvic inflammatory disease. Ultimately, Dr. Murphree performed a total hysterectomy on Eichenseer after which Eichenseer was discharged from the hospital on February 1, 1983. On his discharge summary for Eichenseer, Dr. Murphree diagnosed the condition of Eichenseer as acute pelvic inflammatory disease, but noted the presence of peritonitis, chocolate cysts, tubo-ovarian abscesses, chronic cervicitis, and massive adhesions, indicating the presence of endometriosis.

Thereafter, Eichenseer received $6,658.35 in medical bills which she submitted to Reserve Life in late February for payment. Upon receipt on February 28, 1983, of the above bills, Reserve Life established a work sheet for Eichenseer's claim and forwarded the file to the appropriate department for examination. After Eichenseer signed a "proof of claim" form on March 23, 1983, Reserve Life forwarded to Eichenseer on April 21, 1983, payment for those of her hospital bills covered under a Reserve Life policy previously purchased by Eichenseer's parents on which Eichenseer was listed as an insured. Reserve Life, however, formally denied on June 2, 1983, the claim of Eichenseer submitted under the major medical insurance policy purchased by Eichenseer from Sue Wilson in January 1983. Reserve Life denied the above claim on the basis that Eichenseer had suffered in the hospital from a pre-existing illness which was not covered by the terms of the policy. The following is an account of the relevant facts, as found and

set forth in the extensive opinion of the district court, which occurred after Reserve Life denied the claim by Eichenseer for health insurance benefits under her major medical policy.

Plaintiff (Eichenseer) called Reserve Life on June 21, 1983, and requested an explanation for the denial. Al Vick, a Reserve Life employee, told Eichenseer that her file was still with the claims department, but that he would call her back once he had been able to find her file.

Unbeknownst to the public, Reserve Life was by mid-1983, experiencing severe organizational problems. Due to the unexpected success of a recently offered insurance policy, numerous claims were being received by Reserve Life in addition to the normal number of claims. The employees, faced with the task of matching claim correspondence with policyholders' files, often lost documents or were unable to find and file them for weeks at a time. Although the company has since computerized its operations, claims submitted in 1983 were often processed manually and mishandled.

Dena Marie Brannon was the Reserve Life employee responsibile for handling Eichenseer's claim. Prior to denying her claim, Brannon had obtained only Dr. Murphree's admission summary and had relied solely on the following statement to support a denial: 'The pain has been present in the lower abdomen in periods for the last 2–3 years. This attack started about three days ago....' Although the documents then held also listed as an admitting diagnosis "Acute PID," Brannon interpreted the reports to indicate that Eichenseer had been suffering from her illness since 1980–81. Importantly, Brannon did not consult with either Eichenseer or Dr. Murphree before making this decision and chose not to consult with an in-house physician retained by Reserve Life on a part-time basis.

Although Eichenseer made repeated telephone calls to Reserve Life during the following weeks, she received no relief. On August 22, 1983, after receiving one such call, Reserve Life employees wrote a letter to Dr. Murphree requesting Eichenseer's medical records from his clinic. These records were sent to the insurer in a timely fashion, but were apparently misplaced due to the ongoing organizational crisis.

Eichenseer called Reserve Life again on September 20, 1983, to inquire about the status of her claim. The employee who talked to Eichenseer was unable to find either the file or her clinical records, but when asked if the records had been received, responded by stating that the file was still with the claims department. An exhaustive "stop search" was conducted for the records, but once again ended in failure.

Eichenseer again called Reserve Life on October 24, 1983, and asked Al Vick about her claim. Vick, unable to find the clinical records, told Eichenseer that they had been lost. Eichenseer volunteered to send additional copies to him immediately, and Vick said that would be okay. A package containing these records was sent by registered mail to the insurer by the end of the day.

Al Vick apparently failed to inform Dena Brannon of his conversation with Eichenseer. On October 25, 1983, Brannon wrote Eichenseer a second letter denying her claim on the ground of pre-existing illness. This denial was made despite the absence of the clinical records, and neither Eichenseer nor medical authorities had been consulted in the interim. Eichenseer's plea for officials to check with her out-of-state physician was likewise rejected.

Dr. Murphree's clinical records were received by Reserve Life on October 26, 1983. According to Jerry Jenkins, Dena Brannon's supervisor, no one saw the records except Brannon. Receipt of the records was not acknowledged, and Brannon failed to communicate with Eichenseer for the next five weeks. When asked to explain this performance, Jenkins explained that it was due to mismanagement.

By late 1983, hospital officials had been unsuccessful in their attempts to collect for Eichenseer's hospital stay. Eichenseer's bill was turned over to a

local collection agency. She began to receive telephone calls from the agency's employees at work and at home late at night. Already financially troubled, the calls at work forced Eichenseer to lower her production level and incur the wrath of her supervisors for receiving personal calls on company time. Eichenseer informed Reserve Life of her troubles during her periodic telephone calls; interestingly, no mention of this can be found in the telephone memos contained in her claims file.

On December 13, 1983, Dena Brannon wrote Eichenseer acknowledging receipt of Dr. Murphree's clinical records. Brannon stated that Reserve Life could not consider payment of Eichenseer's claim unless and until Dr. Murphree altered the hospital record to clear up the confusion over the "2–3 years" remark. Brannon futher requested that Eichenseer send certified copies of the amended record to Reserve Life in order to allow a medical consultant to review her case.

Eichenseer's response to this letter was twofold. First, she asked Dr. Murphree to comply with Reserve Life's new request. Second, she informed her father of her continuing troubles, and he decided to hire an attorney to represent her.

Dr. Murphree initially declined to alter the hospital records as requested. Convinced that such a change was not ethically permissible, he instead agreed to sign an affidavit recanting the "2–3 years" remark. An affidavit to this effect was not executed, however, until July of 1984, many months later.

Eichenseer's counsel wrote a demand letter to Reserve Life on April 25, 1984, seeking either payment of the claim or an extended explanation for its denial. Counsel also offered to send any additional documents which Reserve Life desired to obtain. Reserve Life wrote to counsel on June 21, 1984, and reaffirmed its denial, attaching in support the admissions summary and clinical records previously received. In a follow-up letter dated July 10, 1984, the company repeated its request for certified copies of the

hospital record to enable a medical consultant to review the record.

On July 23, 1984, Eichenseer's counsel mailed to Reserve Life a notarized affidavit of Dr. Murphree which asserted that the hospital record was in error and that the statement lower abdomen pain was present for "2–3 years" should read "for 2–3 days." Reserve Life received the letter and affidavit, but lost both documents over the next few weeks.

Eichenseer personally delivered a copy of Dr. Murphree's affidavit to an employee of the Monroe County Hospital and asked that it be placed in the official hospital files. The employee did not refuse Eichenseer's request, but it was never placed in the records of the hospital.

In October of 1984, Eichenseer was again forced to enter the local hospital for treatment of an unrelated illness. Due to her prior financial troubles and the defendant's refusal to pay Eichenseer's prior claims, she was forced to sign papers seeking charitable asistance to pay her bills. Eichenseer's anxiety over the mishandling of her claim increased accordingly.

On October 16, 1984, Eichenseer's counsel sent another demand letter to Reserve Life. Six weeks later, a telegram dated November 29, 1984, was received from Dena Brannon in response stating that she was 'having difficulty in assembling the file' and that Eichenseer's 'patience in this matter is greatly appreciated.'

Reserve Life mailed Eichenseer a follow-up letter January 4, 1985. The insurer reaffirmed its denial of her claim and based its decision on the failure of Dr. Murphree to correct the hospital records.

(footnotes omitted).

Thereafter, Eichenseer filed the instant action against Reserve Life seeking contractual damages under the Reserve Life major medical insurance policy, extra contractual compensatory damages for mental anguish, and punitive damages for gross negligence or reckless disregard on the part of Reserve Life in failing to pay her

insurance claim. During the course of pre-trial discovery, Reserve Life learned of the affidavit previously executed by Dr. Murphree to the effect that the symptoms of Eichenseer upon admission to the hospital had been present for "2–3 days" instead of "2–3 years." After reviewing the above affidavit, Reserve Life paid the claim of Eichenseer on June 16, 1986.

Despite the payment by Reserve of her claim for benefits under the medical insurance policy, Eichenseer determined to pursue the instant action for extra contractual damages and punitive damages. After a bench trial, the district court awarded Eichenseer $1,000 in compensatory damages and $500,000 in punitive damages. In doing so, the district court concluded that Reserve Life was in fact grossly negligent in failing to pay the claim of Eichenseer. Reserve Life now appeals.

## II. DISCUSSION

On appeal, Reserve Life urges that the district court was in error in making the factual and legal determinations under state law that Reserve Life was grossly negligent in failing to pay the insurance claim of Eichenseer. Reserve Life also attacks the imposition of the $500,000 in punitive damages as violative of the United States Constitution and the Constitution of the State of Mississippi. We will address initially the former contention of Reserve Life regarding the factual and legal determinations of the district court, and then discuss the constitutional issues.

### A. *The Findings and Conclusions of the District Court*

On appeal, Reserve Life challenges the legal conclusions reached by the district court that it lacked an arguable basis in denying the claim of Eichenseer and that it acted with gross negligence in processing the claim. Specifically, Reserve Life maintains that the district court incorrectly applied Mississippi substantive law in concluding that punitive damages were warranted against Reserve Life on the facts of the instant appeal. To resolve the above contention of Reserve Life, it is necessary to review Mississippi law on the liability of an insurance company for punitive damages resulting from the bad faith refusal to pay a legitimate insurance claim.

In *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396 (Miss.1975), the Mississippi Supreme Court for the first time recognized that an insurance company could be subjected to punitive damages, but stated that "[p]unitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort." *Progressive Casualty,* 317 So.2d at 398. Following *Progressive Casualty,* in perhaps the seminal case in Mississippi on the law of "bad faith refusal" by an insurance company, *Standard Life Ins. Co. v. Veal,* 354 So.2d 239 (Miss.1977), the Mississippi Supreme Court affirmed a $25,000 award of punitive damages against an insurance company for failing to pay a legitimate claim. In *Veal,* the court refined the relevant query in a bad faith refusal claim by concluding that, "if an insurance company has a *legitimate reason or an arguable reason* for failing to pay a claim, punitive damages will not lie,...." *Veal,* 354 So.2d at 248 (emphasis added). In so concluding, the Mississippi Supreme Court recognized that Mississippi law generally does not favor punitive damages and that such damages should be allowed only "with caution and within narrow limits." *Id.* at 247. *See also Life & Casualty Ins. Co. v. Bristow,* 529 So.2d 620, 622 (Miss.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989). Nevertheless, the *Veal* court also observed that:

This case demonstrates the necessity of awarding punitive damages when an insurance company refuses to pay a legitimate claim and bases its refusal to honor the claim on a reason clearly contrary to the express provisions of its own policy. If an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity. To permit an insurer to deny a legitimate claim, and thus force a claimant to litigate with no fear that claimant's maximum recovery could exceed the policy limits plus interest, would

enable the insurer to pressure an insured to a point of desperation enabling the insurer to force an inadequate settlement or avoid payment entirely.

*Veal,* 354 So.2d at 248.

Since *Veal,* what exactly constitutes a "legitimate or arguable reason" justifying the denial of payment by an insurance company on an insurance claim has been clarified by various decisions of the Mississippi Supreme Court. Specifically, the Mississippi Supreme Court stated in *State Farm Fire & Casualty Company v. Simpson,* 477 So.2d 242 (Miss.1985) that:

> We are of the opinion the term 'legitimate or arguable reason,' although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*Simpson,* 477 So.2d at 250. Stated in another fashion by Justice Robertson in his concurrence in *Blue Cross & Blue Shield, Inc. v. Campbell,* 466 So.2d 833 (Miss. 1984),

> [a]n arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts.

*Campbell,* 466 So.2d at 851. Further, "[i]n determining whether the insurance company had an arguable basis for refusing to pay the claim, 'the evidence in each particular case will decide whether a punitive damage instruction must be granted or refused,'" or, as in the instant case, whether the district court may properly impose punitive damages against the insurance company. *Tutor v. Ranger Insurance Co.,* 804 F.2d 1395, 1398 (5th Cir.1986) (quoting *Mississippi Farm Bureau Mutual Insur-* *ance Co. v. Todd,* 492 So.2d 919, 933 (Miss. 1986)).

A determination by the district court that an insurance company lacked a legitimate or arguable reason for denying payment of an insurance claim does not, however, automatically equate under Mississippi jurisprudence with a conclusion that punitive damages in a given case are appropriate. For instance, clerical errors and other honest mistakes fail to justify punitive damages, even though an arguable basis to deny a claim is absent. *Blue Cross & Blue Shield, Inc. v. Maas,* 516 So.2d 495, 497 (Miss.1987). Rather, the district court must next determine whether the insurer has "committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights" so as to rise to the level of an independent tort. *Pioneer Life Insurance Co. v. Moss,* 513 So.2d 927, 930 (Miss.1987); *Bristow,* 529 So.2d at 622. In a jury setting, the trial court need only determine whether there is a jury issue as to the above inquiry before submitting the issue of punitive damages to the jury; whereas, in the setting of a bench trial as in the instant case, the above threshold inquiry and the ultimate conclusion regarding the gross or reckless conduct of the insurance company collapse into a single query for the district court which must be answered in the affirmative before imposing punitive damages.

In sum, whether or not punitive damages are appropriate in a claim of bad faith on the part of an insurance company in denying a legitimate claim is a two-step inquiry. Specifically, the district court must conclude that (1) the insurance company had no legitimate or arguable reason to deny payment of the claim, and (2) the insurer committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights. Both of the above determinations of the district court constitute questions of law which this Court reviews de novo on appeal. *Bristow,* 529 So.2d at 623; *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803, 809 (Miss.1983). Cognizant of the fact that, under Mississippi law, "any plaintiff asking for punitive damages, or any special or extraordinary

damages based on bad faith of an insurance company has a heavy burden," we are persuaded for the following reasons that the district court correctly applied Mississippi law to conclude that punitive damages against Reserve Life were indeed appropriate in the instant case. *Campbell*, 466 So.2d at 842.

■ In an extremely thorough and well-written opinion, the district court, after setting forth the relevant Mississippi law on "bad faith refusal", concluded that Reserve Life lacked a legitimate or arguable reason at all relevant times to deny the claim of Eichenseer for health benefits. In particular, the district court found that no competent medical authority existed on which Reserve Life could rely in denying the claim of Eichenseer due to a preexisting condition. In this regard, we note that one possible justification for the reluctance on the part of Reserve Life to pay the claim of Eichenseer was the notation by Dr. Murphree on the hospital admission chart that the abdominal pain for which Eichenseer was being admitted had been present for the last "2–3 years." The evidence shows, however, that this statement by Dr. Murphree was clearly in error as inconsistent with the diagnosis of acute pelvic inflammatory disease also made by Dr. Murphree at the time of admission. As noted by the district court, acute pelvic inflammatory disease is an infectious condition which causes the reproductive organs of a woman to become swollen and painful. The onset of the disease is, by definition, sudden. Thus, at a minimum, this one brief medical record, the hospital admission chart, reflected an inconsistency in the diagnosis of Eichenseer's condition which should have alerted Reserve Life to obtain further medical records and refer the claim to a physician for competent medical advice and evaluation prior to denying Eichenseer's claim for benefits. Instead, Reserve Life failed to take such action or to properly investigate the claim.

In fact, even when Dr. Murphree ultimately executed an affidavit to the effect that the phrase "2–3 years" on the hospital admission chart should have been "2–3 days," Reserve Life lost that correction and continued to deny the claim.[1] When Reserve Life denied the claim for the fifth time, approximately two years from the date Eichenseer initially presented her claim for benefits to Reserve Life, the record reveals that the affidavit by Dr. Murphree correcting his earlier statement on the hospital admission chart still was not contained in the claims file for Eichenseer at Reserve Life. Further, the file lacked some of the hospital records pertaining to the stay of Eichenseer at the hospital, and the file also revealed that no physician had yet been consulted by the company with respect to the claim. In fact, no physician had been consulted at any time prior to denying the claim of Eichenseer on June 2, 1983, October 25, 1983, December 13, 1983, June 21, 1984, or January 4, 1985.

At this juncture, it should be noted that the district court did recognize that Reserve Life ultimately possessed at least an arguable reason in early 1987 to deny the claim of Eichenseer after receiving a report from the hospital pathologist and consulting a medical expert for the proper interpretation of that report. This arguable basis was that Eichenseer suffered from endometriosis, a chronic condition which evidently exhibits similar symptoms to those of acute pelvic inflammatory disease. Nevertheless, the above arguable basis on which Reserve Life seeks to rely in justifying its denial of Eichenseer's claim and thereby avoid punitive damages did not exist at the time Reserve Life initially denied the claim of Eichenseer or at any time thereafter until the instant suit was commenced. Indeed, Reserve Life's own medical expert, Dr. John R. Sanders, agreed with the experts of Eichenseer at trial that a final medical diagnosis should not be made in a situation such as that of Eichen-

---

1. At trial, Reserve Life denied ever having received such an affidavit by Dr. Murphree from Eichenseer. Noting the disorganization and mismanagement of the claims department at Reserve Life during the relevant period, however, the district court concluded that the affidavit was in fact mailed by counsel for Eichenseer and received by Reserve Life who subsequently lost the critical document. Since the conclusion of the district court regarding the receipt of the affidavit by Reserve Life is a reasonable inference from the evidence presented at trial, we cannot say that the above conclusion is clearly erroneous. Fed.R.Civ.P. 52(a).

seer until after the pathology lab has reported its results.

Implicit within the above acknowledgment by the district court that Reserve Life possessed an arguable reason to deny Eichenseer's claim at the time of trial, while at the same time concluding that Reserve Life did not possess an arguable reason to deny Eichenseer's claim sufficient to preclude the imposition of punitive damages, is the determination by the district court that the relevant window for the latter inquiry regarding punitive damages is necessarily a flexible one dependent upon the facts of a particular case. For instance, in seeking to avoid the imposition of punitive damages in a bad faith refusal case, an insurance company may not delay investigation of a claim for a significant period of time and then, after investigation, rely on the arguable basis for denying the claim ultimately discovered through the dilatory investigation. Thus, we are persuaded that the above approach by the district court is the proper one, particularly on the facts of the instant case where the arguable reason to deny the claim did not arise until after suit was commenced.

We also conclude that the district court did not err in reaching the legal conclusion that Reserve Life acted with gross negligence and a reckless disregard for the rights of its insured in denying Eichenseer's claim over a prolonged period of time without properly investigating that claim. The above conclusion of the district court is supported by the well-established and detailed obligations which Mississippi law places upon insurance companies against which medical claims have been filed. These obligations are accurately set forth in some detail in the extensive opinion of the district court. It is not necessary to repeat each of those obligations here; instead, we stress just one of those require-

ments since it was so obviously the subject of major failure on the part of Reserve Life in processing the claim of Eichenseer.

Pursuant to Mississippi law, if an insurance claim is related to the health of a claimant, an insurance company must make "reasonable efforts" to obtain all available medical information relevant to the claim. *See Life Insurance Co. v. Allen*, 518 So.2d 1189 (Miss.1987); *Bankers Life & Casualty Co. v. Crenshaw*, 483 So.2d 254, 271–73 (Miss.1985). *See generally, Reserve Life*, 444 So.2d 803. After recognizing the above obligation of an insurance company in Mississippi, the district court in the instant appeal analyzed several Mississippi "bad faith refusal" cases to determine that which constitutes "reasonable efforts" on the part of an insurance company to obtain such medical information. After doing so, the district court then concluded that the complete failure of Reserve Life to comply with the above duty of obtaining the relevant medical information as to Eichenseer's claim, as well as the delay by Reserve Life in processing Eichenseer's claim, constituted a reckless disregard for the rights of Eichenseer. We agree with the above conclusion of the district court and in doing so, observe that it is a powerful testament to the complete default of Reserve Life to comply with this clear requirement of Mississippi law in the instant case that Reserve Life neglected to make any effort at all to obtain the relevant medical information as to Eichenseer's claim, and indeed failed to ask any physician's advice with respect to the claim of Eichenseer, until almost four years after the claim was filed. Accordingly, we conclude that the district court did not err in determining that (1) Reserve Life lacked a legitimate or arguable reason to deny Eichenseer's claim, and (2) that Reserve Life acted with gross and reckless disregard for the rights of Eichenseer in processing her claim.[2]

---

2. In challenging the above legal conclusions of the district court, Reserve Life maintains that the district court improperly interpreted and applied the relevant Mississippi cases in this area of the law. We reject the above contention of Reserve Life, but would discuss briefly one decision in particular which Reserve Life contends was erroneously relied upon by the district court. In *Blue Cross & Blue Shield v. Campbell*, the Mississippi Supreme Court re-

versed an award of extra contractual damages to the plaintiff after finding that the insurer possessed a reasonably arguable basis for denying the claim of the insured due to the lack of "proof of [the hospital] doing any act, taking any step to satisfy Blue Cross's contention that [the plaintiff] had been hospitalized for a preexisting condition,...." *Campbell*, 466 So.2d at 840. Reserve Life asserts that the factual cir-

Reserve Life next argues on appeal that the district court erroneously found the existence of certain facts relevant to the instant dispute between the parties. Pursuant to Federal Rule of Civil Procedure 52(a), this Court reviews findings of fact of the district court under a clearly erroneous standard. We need not discuss in detail, however, the factual findings of the district court alleged to be clearly erroneous by Reserve Life as a review of the record reveals that the critical factual findings of the district court are amply supported by the evidence presented at trial. Those findings reflect a factual scenario wherein Reserve Life several times denied the medical benefits claim of Eichenseer without ever having sought medical advice from its own staff or from an outside physician, and without ever having obtained and reviewed the clinical records of Eichenseer.[3]

### B. *The Constitutional Claims*

In the present era of large damage awards, perhaps no other issue has generated as much interest and controversy as the proposition that the imposition of punitive damages violates certain guarantees secured by the United States Constitution such as the Eighth Amendment prohibition against excessive fines and the Fourteenth Amendment prohibition against deprivation of property without due process of law. On appeal, Reserve Life challenges the imposition of punitive damages in the amount of $500,000 in the instant case as violative of the Eighth and Fourteenth Amendments. We reject the eighth amendment challenge of Reserve Life on the basis of recent Supreme Court precedent. We like-

wise find without merit the fourteenth amendment due process challenge of Reserve Life to the imposition of punitive damages in this case. In doing so, however, we specifically decline to resolve the difficult issue of whether the Due Process Clause acts as a check on the discretion of a trier of fact to impose punitive damages in the absence of any statutory limits; instead, we conclude that, assuming the Due Process Clause so limits the imposition of punitive damages, on the facts of the instant case, due process was not violated by the $500,000 punitive damage award against Reserve Life.

■ Addressing first the eighth amendment claim of Reserve Life, we look to the decision issued only last term by the Supreme Court in *Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), wherein the Supreme Court foreclosed the eighth amendment challenge to the imposition of punitive damages raised here by Reserve Life. Specifically, the Supreme Court concluded that, "on the basis of the history and purpose of the Eighth Amendment, ... its Excessive Fines Clause does not apply to awards of punitive damages in cases between private parties." *Browning–Ferris,* 109 S.Ct. at 2911. While the decision of the Supreme Court in *Browning–Ferris* involved an award of punitive damages imposed upon the defendant by a jury, and not by a trial judge following a bench trial as in the instant case, we can perceive of no distinction between the two scenarios which would dictate a different conclusion in the latter instance. Accordingly, we reject the

cumstances in *Campbell* parallel those of the instant case and thus, punitive damages are not appropriate. Several critical distinctions exist, however, which defeat the above contention of Reserve Life. Those distinctions are (1) the information in the medical records relied upon by Reserve Life to deny Eichenseer's claim was far more ambiguous than that contained in the medical records in *Campbell;* (2) Reserve Life failed to obtain a medical opinion until after Eichenseer filed suit, while Blue Cross promptly referred the claim to doctors and nurses on their medical staff after receiving the claim; and (3) contrary to the instant case, there was no issue of negligence on the part of Blue Cross in processing the claim in that case.

3. Reserve Life also maintains on appeal that, even if Reserve Life had properly investigated the claim of Eichenseer, that claim still would have been denied as the final report of the hospital pathologist would have provided an arguable basis on which to deny the claim. Thus, Reserve Life argues the alleged grossly negligent acts in the instant case did not proximately cause the harm suffered by Eichenseer. The above contention by Reserve Life is without merit, however, as the argument overlooks the fact that it was the delay by Reserve Life in properly investigating Eichenseer's claim which caused the injury to Eichenseer, not the denial of the claim itself.

eighth amendment challenge raised by Reserve Life to the $500,000 award of punitive damages on the basis of the holding by the Supreme Court in *Browning–Ferris* that the excessive fines prohibition of the Eighth Amendment does not apply to awards of punitive damages in cases between private parties.

■ Reserve Life also maintains that the imposition of $500,000 in punitive damages for its conduct in processing the claim of Eichenseer violates the constitutional protections afforded by the Due Process Clause of the Fourteenth Amendment. Initially, we note that the Supreme Court, after rejecting the eighth amendment challenge by the defendant to the award of punitive damages in *Browning–Ferris*, declined to address the above issue due to the failure of the petitioners in that case to raise the due process argument before either the district court or the court of appeals, or to make specific mention of the due process argument in their petition for certiorari before the Supreme Court. *Browning–Ferris*, 109 S.Ct. at 2921. The Supreme Court, however, has not been without comment on the issue of whether the Due Process Clause operates to limit the size of punitive damage awards by juries in civil cases brought by private parties. In fact, the issue itself is not a novel one in Supreme Court jurisprudence. In several decisions, the Supreme Court has indicated that the Due Process Clause places outer limits on the size of a civil damage award to a private litigant where that award is imposed pursuant to a statutory scheme. These decisions would seem to hold that, under such circumstances, the Due Process Clause forbids damage awards that are "grossly excessive," or "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Waters–Pierce Oil Co. v. Texas*, 212 U.S. 86, 111, 29 S.Ct. 220, 227, 53 L.Ed. 417 (1909); *St. Louis, I.M. & S.R. Co. v. Williams*, 251 U.S. 63, 66–67, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919). *See Browning–Ferris*, 109 S.Ct. at 2923 (Brennan, J., concurring). *See also Southwestern Telegraph & Telephone Co. v. Danaher*, 238 U.S. 482, 491, 35 S.Ct. 886, 888, 59 L.Ed. 1419 (1915); *Missouri Pacific Ry.*

*Co. v. Humes*, 115 U.S. 512, 522–23, 6 S.Ct. 110, 113–14, 29 L.Ed. 463 (1885).

As noted by the Supreme Court in *Browning–Ferris*, however, the issue of whether "due process acts as a check on undue jury discretion to award punitive damages in the absence of any express statutory limit" has never been directly addressed by the high court. *Browning–Ferris*, 109 S.Ct. at 2921. Nonetheless, several justices have expressed their views on the issue. For instance, in *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988), a Mississippi bad faith refusal case, Justice O'Connor, in a separate opinion, intimated that the method by which Mississippi allows a jury to impose punitive damages on a defendant may violate the Due Process Clause. Highlighting the fact that "[p]unitive damages are not measured against actual injury, so there is no objective standard that limits their amount," Justice O'Connor stated that:

Under Mississippi law, the jury may award punitive damages for any common law tort committed with a certain mental state, that is, 'for a willful and intentional wrong, or for such gross negligence and reckless negligence as is equivalent to such a wrong.' Although this standard may describe the required mental state with sufficient precision, the amount of the penalty that may ensue is left completely indeterminate. As the Mississippi Supreme Court said, 'the determination of the amount of punitive damages is a matter committed solely to the authority and discretion of the jury.' This grant of wholly standardless discretion to determine the severity of punishment appears inconsistent with due process.

*Crenshaw*, 486 U.S. at ——, 108 S.Ct. at 1655–56 (citations omitted).

Subsequent to the issuance of the opinion in *Crenshaw*, two other justices have discussed the potential application of the Due Process Clause to punitive damage awards. In *Browning–Ferris*, Justice Brennan, in a separate concurrence joined by Justice Marshall, commented on the due process

issue, stating that, "[w]ithout statutory (or at least common-law) standards for the determination of how large an award of punitive damages is appropriate in a given case, juries are left largely to themselves in making this important, and potentially devastating, decision." *Browning–Ferris*, 109 S.Ct. at 2923. Justice Brennan further stated that,

> [b]ecause '[t]he touchstone of due process is protection of the individual against arbitrary action of government,' I for one would look longer and harder at an award of punitive damages based on such skeletal guidance than I would at one situated within a range of penalties as to which responsible officials had deliberated and then agreed.

*Id.*

Despite recognizing the importance of the due process issue in the above decisions, the Supreme Court recently denied three petitions for certiorari in cases which sought to raise the issue; thus, a definitive resolution of this highly controversial issue is not foreseeable in the near future. *See Metromedia Inc. v. April Enterprises, Inc., cert. denied,* — U.S. —, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989); *Goodyear Tire & Rubber Co. v. Hodder,* 426 N.W.2d 826 (Minn.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Miller v. Cudahy Co.,* 858 F.2d 1449 (10th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). Further, it is noted that no circuit court has yet ruled on this issue. Nonetheless, we need not become the first court to resolve this challenging inquiry as, assuming arguendo that the Due Process Clause constrains the imposition of punitive damages in civil cases brought by private parties, the protections afforded by the Due Process Clause were not violated on the facts of the instant case. Prior to setting forth the reasons why the Due Process Clause is not violated on the facts of this specific case, however, we make the following observations regarding the Due Process Clause and punitive damages.

Pursuant to the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." Interpreting the above amendment, the Supreme Court has stated that the Due Process Clause was intended "to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Bank of Columbia v. Okely,* 17 U.S. (4 Wheat.) 235, 244, 4 L.Ed. 559 (1819)). Further, the Supreme Court has concluded that "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966).

The due process arguments recently being raised by defendants to the imposition of punitive damages, and the argument raised by Reserve Life in the instant appeal, revolve primarily around the premise that punitive damages should not be imposed by juries which have been provided with precious little guidance as to the appropriate amount to be imposed on a defendant in a particular instance. By allowing juries broad discretion in imposing punitive damages without such guidance, it is argued that jury awards are inconsistent and arbitrary, with one defendant being assessed $2,000,000 in punitive damages for the same conduct which another defendant may only be assessed $10,000 in punitive damages. In this regard, Reserve Life argues in the instant appeal that the imposition of punitive damages under Mississippi law is done without adequate standards and thus, there is a vagueness in the process that violates the requirements of the Due Process Clause.

In the instant case, however, the due process rights of Reserve Life were not violated as the punitive damages law of Mississippi in the specific context of bad faith refusal cases provided Reserve Life with adequate notice of the type of conduct which would subject it to a significant punitive damage award. Based on the law of these cases, Reserve Life should have

known that its conduct in processing the claim of Eichenseer in such a reckless and grossly negligent manner would lead to the imposition of a significant punitive damage award. In particular, we note once again the well-established requirement in Mississippi law that an insured make reasonable efforts in obtaining all relevant medical information regarding the claim of an insured for health benefits. In the instant case, despite being provided with access to the medical records of Eichenseer, Reserve Life failed to obtain the relevant medical information or to refer the claim of Eichenseer to its medical staff or a competent physician for evaluation until four years following the initial claim of Eichenseer for benefits.[4]

Further, and importantly, the instant case is not the first instance wherein Reserve Life has been assessed punitive damages for the grossly negligent manner in which it processed the claim of an insured. *See Reserve Life,* 444 So.2d 803. In *McGee,* Reserve Life was assessed a total of $158,000 in damages for its conduct in failing to adequately investigate the medical history of its insured prior to issuing the policy, and then denying coverage once the insured submitted a claim under the policy. The fact that substantial punitive damages had been imposed previously against Reserve Life for its mishandling of the claim of an insured provided positive notice to Reserve Life that it would likely be assessed even larger damages in the future for the careless and reckless handling of the claim of an insured.

Finally, in concluding that, even if the Due Process Clause limits the imposition of punitive damages, the guarantees of due process would not be violated in the instant case, we rely on the fact that the district court properly applied the criteria for imposing punitive damages under Mississippi law in reaching its decision and thus, did not act in an arbitrary or capricious fashion. Under the common law and under the law of punitive damages as it has developed in Mississippi, "[p]unitive damages 'are not compensation for injury. Instead,

they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.' " *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). In the instant appeal, the conduct which the district court sought to deter through the imposition of punitive damages against Reserve Life in the amount of $500,000 was (1) the wrongful denial of the claim of an insured due to improper investigation of the claim, including the failure to use reasonable efforts to obtain relevant medical information and to refer the claim to a physician for competent medical evaluation of the claim; and (2) the delay in processing the claim of an insured due to mismanagement and disorganization in the insurance company.

Pursuant to Mississippi law, once it is established that punitive damages in some amount should be allowed, the amount thereof is determined by reference to the following factors:

(1) Such amount as is necessary for the punishment of the wrongdoing of the defendant and deterring defendant from similar conduct in the future;

(2) Such amount as is reasonably necessary to make an example of the defendant so that others may be deterred from the commission of similar offenses;

(3) The pecuniary ability or financial worth of the defendant.

*Crenshaw,* 483 So.2d at 278 (citations omitted). Other factors to be considered in determining the final amount of punitive damages to be imposed are the degree of the offense, the presence or absence of malice, the motive behind the actions, the injury intended, and the public sense of justice and propriety. *See generally, Mutual Life Insurance v. Estate of Wesson,* 517 So.2d 521, 532 (Miss.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). Finally, "the punitive

---

**4.** Of course, mere delay in investigating a claim will not support an award of punitive damages unless, as in the instant case, that delay is so

unreasonable as to constitute an independent tort. *Tutor,* 804 F.2d at 1398–99.

damage award amounts to a measure of compensation to the plaintiff for service to the public in bringing the action, which should act as a deterrent of similar acts of wrongdoing to other members of the public." *Wesson,* 517 So.2d at 532.[5]

Applying the above factors in the instant case, the district court drew special attention to the fact that the punitive damages previously imposed upon Reserve Life in *McGee* apparently "did not get the attention of Reserve Life and had little, if any, deterrent effect." As a result, to effectively deter Reserve Life from engaging in grossly negligent conduct in the future, the district court imposed a greater amount of punitive damages in the instant case than was imposed in *McGee.* Further, while not finding malice on the part of Reserve Life in wrongfully denying Eichenseer's claim, the district court did conclude that the motive behind the actions of Reserve Life in the processing of Eichenseer's claim was primarily to save money. In this regard, the district court observed that "[i]f an insurer uses its superior position to wrongfully deny a claim under a policy, the public sense of justice is offended." Finally, the district court received evidence of the net worth of Reserve Life reflecting such net worth to be $157,000,000. Based upon the above figure, the district court then concluded the amount of $500,000 in punitive damages was appropriate. After reviewing the record and opinion of the district court, we cannot say that the district court erred in its application of Mississippi substantive law on punitive damages to the facts of this case.

In sum, persuaded for the reasons set forth above that Reserve Life was provided with adequate notice of the type of conduct which would subject it to significant punitive damages, and that the decision of the district court to impose punitive damages in the amount of $500,000 was in accordance with well-established guidelines for the imposition of punitive damages under Mississippi law, we conclude that the guarantees afforded Reserve Life by the Due Process Clause were not violated on the facts of the instant case. In so concluding, we specifically decline to address whether the Due Process Clause may ever constrain the imposition of punitive damages in a civil case brought by private parties.[6]

As a final note, however, we observe that the policy considerations for punitive damages are well-established in the evolution of common law. "Punitive damages are an important component of the remedial side of our law whose purpose is the protection of the customer." *Crenshaw,* 483 So.2d at 278. Indeed, punitive damages may serve to deter egregious and grossly negligent conduct by overbearing or financially oppressive defendants who might otherwise proceed without any semblance of restraint in such conduct, conceivably resulting in loss of life or other significant societal injury. As stated by the Supreme Court in 1885:

> 'The law,' says Sedgwick in his excellent treatise on Damages, 'permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interests of society and of the aggrieved individual, and

---

**5.** We observe that the above criteria, on the facts of the instant case, satisfy any proportionality concerns as to the $500,000 damage award for due process purposes. In this regard, we are persuaded that it would be far more appropriate for the Mississippi legislature—not this court—to set forth any more exact proportionality guidelines for punitive damages in Mississippi.

**6.** Reserve Life additionally contends that the imposition of the $500,000 in punitive damages (1) violates the constitutional prohibition against ex post facto laws, (2) impairs its right to contract in violation of the federal and Mississippi constitutions, and (3) chills the fundamental right of access to the courts as guaranteed by the federal and Mississippi Constitutions. The ex post facto claim is without merit as acceptance of such an argument would effectively transform all evolving standards of conduct in negligent cases to ex post facto laws. The contracts clause argument fails as the clause only applies to actions by the legislative authority of a state, not its judiciary. *Frazier v. Lowndes County,* 710 F.2d 1097, 1099 (5th Cir. 1983). Finally, the imposition of punitive damages does not chill the right of a litigant to access the courts as Mississippi only imposes punitive damages on an insurer who acts with gross negligence and denies a claim with no arguable basis, not on insurers who only mistakenly deny claims.

gives damages, not only to recompense the sufferer, but to punish the offender.' The discretion of the jury in such cases is not controlled by any very definite rules; yet the wisdom of allowing such additional damages to be given is attested by the long continuance of the practice. 'We are aware ... that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument....'

*Missouri Pacific Ry.*, 115 U.S. at 521, 6 S.Ct. at 113 (citations omitted). Because of the harsh consequences which might ensue from such action, courts should not lightly seek to limit the imposition of punitive damages without due thought and consideration to those consequences.

AFFIRMED.