**Patricia Stephenson EICHENSEER, Plaintiff–Appellee,**

v.

**RESERVE LIFE INSURANCE COMPANY, Defendant–Appellant.**

**No. 88–4421.**

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1990.

L.F. Sams, Jr., John S. Hill, Donna M. Barnes, Tupelo, Miss., for defendant-appellant.

Dewitt T. Hicks, Jr., Thomas L. Kesler, Columbus, Miss., for plaintiff-appellee.

---

Before RUBIN, POLITZ and JOHNSON, Circuit Judges.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Petition for rehearing denied.

JONES, Circuit Judge, dissenting from denial of rehearing en banc, joined by GEE, JOLLY and SMITH, Circuit Judges.

A panel of our court held that assuming *arguendo* the applicability of the Due Process Clause to awards of punitive damages, no violation of due process can be found on the facts of this case. By their lights, the defendant Reserve Life was "provided with adequate notice of the type of conduct which would subject it to significant punitive damages," and the district court's award was within Mississippi's "well-established guidelines for the imposition of punitive damages." The panel thus affirmed a $500,000 punitive damage award for Reserve's delay and belated payment of a $6,658.38 medical claim, amounting to a penalty 75 times the value of the claim.

Notwithstanding the decision of my brethren to the contrary, this case should be reheard en banc. Notwithstanding its demurrer on the due process issue, the rationale of the panel opinion sets no due process limit on awards of punitive dam-

ages for bad faith refusals to pay insurance claims governed by Mississippi law.[1] I am convinced that the panel's reasoning and result are fundamentally in error. Mississippi's bad faith refusal tort, a creature designed by the state supreme court, not the legislature, to punish and deter insurance companies when they fail to pay certain claims, mocks our notions of fundamental fairness embodied in the Due Process Clause of the fourteenth amendment. First, neither Reserve Life nor most of the dozens of other insurers who have been attacked by this new Mississippi tort have had adequate notice of the conduct that could result in punitive damage awards. Second, despite the panel's incantation of Mississippi's "well established standards," the fact finder possesses unbridled discretion to punish, and punishment is meted out among defendants in radically varying amounts.

Yet another factor counsels rehearing en banc. A majority of the Supreme Court have questioned the constitutional propriety of punitive damage awards run amok.[2] As lower court judges, we should debate this issue for the benefit of the higher Court and the public.[3]

Lacking the opportunity for that debate, but in hope of spurring it on, I shall shadow-box the panel opinion.

### I. Mississippi Law

Commencing with *Standard Life Ins. Co. v. Veal*, 354 So.2d 239, 248 (Miss.1977) the Mississippi Supreme Court entered the vanguard of state courts that began to create torts from what were previously breach of contract actions against insur-

---

1. *Eichenseer v. Reserve Life Ins. Co.*, 881 F.2d 1355, 1363 (5th Cir.1989).

2. *See Browning–Ferris Indus. v. Kelco Disposal, Inc.*, — U.S. —, —, 109 S.Ct. 2909, 2923, 106 L.Ed.2d 219, 241 (1989) (Brennan, J., concurring) (Justice Brennan, joined by Justice Marshall, indicated that due process clause may limit punitive damage awards that are based on "skeletal guidance"); *id.* 109 S.Ct. at 2924, 106 L.Ed.2d at 242–43 (O'Connor, J., concurring in part and dissenting in part) (joined by Justice Stevens); *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 86–89, 108 S.Ct. 1645, 1654–56, 100

L.Ed.2d 62, 77–79 (1988) (O'Connor, J., concurring in part and concurring in the judgment) (Justice O'Connor, joined by Justice Scalia, stated that unlimited jury discretion in awarding punitive damages may violate the due process clause).

3. "[W]e ought not leave this lion in the busy street of our trial courts and inevitably multiply the appellate workload." *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 884 F.2d 167, 170 (5th Cir.1989) (Higginbotham, J., dissenting from denial of rehearing en banc).

ance companies for failure to pay a claim. The state supreme court has articulated the basis for imposing punitive damages as a two-step process: first, was there a legitimate and arguable reason for the insurance company to deny coverage; second, if no such reason appears, was the denial motivated by malice or recklessness. *Eichenseer*, 881 F.2d at 1360. If the jury finds the requisite state of mind, they are entitled to award punitive damages based upon multiple factors:

> (1) Such amount as is necessary for the punishment of the wrongdoing of the defendant and deterring defendant from similar conduct in the future;
>
> (2) such amount as is reasonably necessary to make an example of the defendant so that others may be deterred from the commission of similar offenses; and
>
> (3) the pecuniary ability or financial worth of the defendant.

*Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254, 278 (Miss.1985) (citations omitted). It has been correctly observed that the standards for insurance practice effectively mandated by the Mississippi Supreme Court are evolving on a case-by-case basis. *Eichenseer v. Reserve Life Ins. Co.*, 682 F.Supp. 1355, 1366 (N.D.Miss.1988).

The long march of the Mississippi Supreme Court toward "equitable" insurance claim handling practices is not without significance for this case. Surprisingly, however, this sequence of decisions is completely overlooked by our court's opinion. Prior to the handling of Eichenseer's claim, *no* Mississippi case had held that either failure to obtain "all relevant medical records" or egregious delay in processing a claim could fall within the purview of a bad faith refusal tort. The Mississippi cases before 1983 dealt with entirely different fact patterns: *Veal*, 354 So.2d at 247–48 (punitive damages for insurance company's failure to honor credit insurance claim clearly within

terms of policy); *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829, 834–35 (Miss. 1979) (payment withheld on homeowners' policy in violation of its terms after arson investigation had terminated favorably for insureds); *Reserve Life Ins. v. McGee*, 444 So.2d 803, 805–06, 811 (Miss.1983) (post-claims underwriting, i.e. rescission of a medical policy, after insured made a covered claim, for a material misstatement of facts in the policy application when the insured provided sufficient information about past medical treatment that the company could have investigated before issuance of a policy). *See also Richards v. Allstate Ins. Co.*, 693 F.2d 502 (5th Cir. 1982) (company misled automobile policyholders to believe there was an exclusion to policy coverage, even though Mississippi law did not recognize such exclusion); Freeland & Freeland, Bad Faith Litigation: A Practical Analysis, 53 Miss.L.J. 237, 276 (1983) ("The lack of clarity in the case law has made it exceedingly difficult for either plaintiffs or defendants to evaluate the merits of a bad faith claim.").

Not until after Eichenseer's claim was denied by Reserve did the Mississippi Supreme Court begin to "punitize" in certain cases an insurer's failure to obtain "all relevant medical records", *Crenshaw*, 483 So.2d at 270, 272; and its failure to consult with a medical expert prior to denying a claim, *Life Ins. Co. v. Allen*, 518 So.2d 1189, 1193 (Miss.1987). Even then, the court's pronouncements have not been uniform. In *Blue Cross & Blue Shield v. Campbell*, 466 So.2d 833, 840–41 (Miss. 1984), predating *Crenshaw*, the court found as a matter of law that an insurance company could rely on ambiguous hospital records alone in denying a claim based on a pre-existing condition clause of the policy. Later Mississippi cases have continued to elaborate, ex post facto, upon acceptable claims handling policies.[4] Indeed, but for

---

**4.** *National Life and Accident Ins. Co. v. Miller*, 484 So.2d 329, 337 (Miss.1985) (failed to interview agents and supervisor until two weeks before trial); *Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 768 (Miss.1985) ("even after the claim arose, Southern made no attempt to contact its agent to determine what

imputable knowledge she had."); *Blue Cross & Blue Shield v. Maas*, 516 So.2d 495, 496–97 (Miss.1987) (insurer inadequately handled and investigated claim after insured filed lawsuit); *Mutual Life Ins. Co. v. Wesson*, 517 So.2d 521, 526–27 (Miss.1987) (insurer denied claim without properly reviewing policy and application,

the rulings that already exist regarding the bad faith refusal tort, Mississippi's Supreme Court has eschewed a definition of actionable conduct in favor of mere description of the justices' goal:

> We are of the opinion the term "legitimate or arguable reason," although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*State Farm Fire & Casualty Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985) (citation omitted). This non-rule of law may be likened to the legislative preamble of a statute: while it expresses the legislature's intent, it does not define the conduct to be regulated, as do the substantive provisions of an enactment. Yet, the Mississippi Supreme Court has repeatedly authorized punishment for failure to abide by its intentions.

Mississippi courts all but refuse to interfere with the amounts of punitive damages assessed by the fact finder. As the majority opinion put it in *Bankers Life v. Crenshaw,* an award equal to less than 1% of the company's net worth does not shock the judicial conscience. *See Bankers Life & Cas. Co.,* 483 So.2d at 277–79.

## II. Mississippi Law Applied to this Case

Reserve Life took three and a half years to pay Eichenseer's claim for medical ex-

penses incurred from her hysterectomy. The company at all times based its denial of the claim on a pre-existing condition exclusion. This was supported by a statement of Eichenseer's treating physician in the hospital admitting records, that the patient's "pain ha[d] been present in the lower abdomen in period for the last 2–3 years." The same doctor's discharge summary, however, diagnosed acute pelvic inflammatory disease—a condition that would have had to arise suddenly—as well as pre-existing inflammation, cysts and endometriosis. The company's adjuster did not consult with medical experts before denying the claim. Moreover, the company fumbled and mismanaged its claims handling throughout Eichenseer's attempts to seek a non-judicial adjustment. After she filed suit, the company decided to pay her $6,000 plus claim, although it later produced expert testimony corroborating its evaluation that she underwent surgery for a pre-existing condition.

The trial court, having analyzed Mississippi bad faith refusal law in detail, found this case governed by the rule that a company must make a reasonable effort to obtain "all available medical information." 682 F.Supp. at 1366. The court recognized that this rule derived from two cases decided after Eichenseer's claim was handled. *See Allen,* 518 So.2d at 1193; *Crenshaw,* 483 So.2d at 270, 272.[5] Our panel, on appeal, likewise relied on these two cases to establish the "clear requirement in Mississippi law" which Reserve, two years before the "clear requirement" was expressed by the Mississippi Supreme Court, violated.[6]

Justifying the sum of $500,000 in punitive damages, the trial court tried to enforce Mississippi's "standards" for their as-

---

but relied solely on inaccurate computer generated data); *Allen,* 518 So.2d at 1193 (claims adjuster failed to consult physician before denying claim).

**5.** Elsewhere, the trial court's opinion found these two cases "most analogous" to the one at bar. 682 F.Supp. 1371, 1372.

**6.** "Based on the law of these cases, Reserve Life should have known that its conduct in process-

ing the claim of Eichenseer in such a reckless and grossly negligent manner would lead to the imposition of a significant punitive damage award. In particular, we note once again the well-established requirement in Mississippi law that an insured [sic] make reasonable efforts in obtaining all relevant medical information regarding the claim of an insured for health benefits." 881 F.2d at 1365–66.

sessment. In addition to citing the goals enunciated by *Crenshaw, supra,* the court considered "the degree of the offense, the presence or absence of malice, the motive behind the actions, the injury intended, and the public sense of justice and propriety." *See* 881 F.2d at 1366 (citing *Mutual Life Ins. v. Estate of Wesson,* 517 So.2d 521, 532 (Miss.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988)). The court characterized Reserve's failure to pay Eichenseer's claim promptly as "egregious". The court also found that Reserve had once before suffered a Mississippi punitive damage award, which, according to the court, "did not get the attention of Reserve Life and had little, if any, deterrent effect." 682 F.Supp. at 1373. To its apparent discredit in the court's eyes, Reserve did not tender interest when it finally paid Eichenseer's claim and "expressed regret at trial" for its decision to pay. Although declining to find malice, the court decided that Reserve was motivated by an intent "to save money by denying a claim." *Id.* The amount of the award was deliberately set higher than Reserve's earlier ($158,000) punitive damage award, but less than the amounts approved in two other Mississippi cases. *See Mutual Life Ins. v. Estate of Wesson,* 517 So.2d at 533 (court ordered remittitur of $6.5 million on punitive award of $8 million); *Crenshaw,* 483 So.2d at 277 ($1.6 million punitive award). The court found Reserve's net worth to be $157 million, but it expressed confidence that "this award will get the attention of Reserve Life and other insurance company officials." 682 F.Supp. at 1373.

### III. Due Process

"[N]or shall any state deprive any person of life, liberty or property without due process of law."

### U.S. Constitution, Amendment XIV.

The Due Process Clause has long and consistently been held to bar legislation that is unduly vague, i.e. that does not give fair notice of the conduct it proscribes or that entrusts enforcement to the unguided discretion of prosecutors or juries. Fundamental fairness, which characterizes due process, has been held to set up a calculus for determining whether a particular deprivation, e.g., of Reserve's property through a punitive damage award, is attended by sufficient safeguards of accuracy to realize the goals of public policy. *Mathews v. Eldridge,* 424 U.S. 319, 332, 335, 96 S.Ct. 893, 901, 903, 47 L.Ed.2d 18 (1976); *Wheeler,* The Constitutional Case For Reforming Punitive Damage Procedures, 69 Virginia L.Rev. 269, 277 (1983). Finally, the Supreme Court has reviewed awards of punitive damages rendered pursuant to legislative enactments to determine whether they were "grossly excessive" or "so severe and oppressive as to be wholly disproportioned to the offense...." [7] As Justice Brennan remarked, surely non-legislative punitive damage awards, which represent the *ad hoc* judgment of a jury, should be subject to more exacting scrutiny than this. *Browning–Ferris,* 109 S.Ct. at 2923, 106 L.Ed.2d at 241–42 (Brennan, J., concurring). In my view, Mississippi's bad faith refusal tort transgresses these limits.

### A. *Vagueness*

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. [footnote omitted] Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those

---

**7.** *St. Louis, I.M. & S. Ry. Co. v. Williams,* 251 U.S. 63, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919); *see also Southwestern Telegraph & Tele. Co. v. Danaher,* 238 U.S. 482, 35 S.Ct. 886, 888, 59 L.Ed. 1419 (1915); *Waters & Pierce Oil Co. v. Texas,* 212 U.S. 86, 29 S.Ct. 220, 227, 53 L.Ed. 417 (1909); *Missouri Pacific Ry. Co. v. Humes,* 115 U.S. 512, 522–23, 6 S.Ct. 110, 113–14, 29 L.Ed. 463 (1885).

who apply them. [footnote omitted] A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. [footnote omitted]

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

*Grayned* thus summarized a principle that was recognized over 100 years ago by the Supreme Court. *See United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.")[8] In *Giaccio v. State of Pennsylvania,* 382 U.S. 399, 402, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966), the Court specifically held that a state act "whether labeled 'penal' or not must meet the challenge that it is unconstitutionally vague." *See also Cline v. Frink Dairy,* 274 U.S. 445, 463, 47 S.Ct. 681, 687, 71 L.Ed. 1146 (1927). *Giaccio* summarized this doctrine well:

"[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."

*Giaccio,* 382 U.S. at 402–03, 86 S.Ct. at 520–21 (citations omitted).[9]

It is also true, however, that the degree of scrutiny required by the vagueness doctrine may vary with the relative severity of the penalty imposed. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

We are confronted, as usual in matters of constitutional law, with a question of degree. The panel opinion held that Reserve Life had adequate notice from Mississippi law that its wrongful denial of an insurance claim could lead to the imposition of punitive damages. I disagree, because this equation fails to take into account the punitive nature of punitive damages. Punitive damages are "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974). In Mississippi bad faith refusal law, their objectives are punishment of the wrongdoer; deterrence of the wrongdoer and others from engaging in similar conduct; and rewarding the injured party for bringing suit. *See Eichenseer,* 682 F.Supp. at 1372; *Crenshaw,* 483 So.2d at 278. Punishment may not, according to the vagueness doctrine, be inflicted arbitrarily and capriciously. The goal of punishment critically distinguishes punitive damages from other common law remedies which are solely compensatory, and it requires a stricter vagueness analysis.

---

**8.** For similar expressions of the doctrine of vagueness, *see, e.g., United States v. National Dairy Prod. Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) ("All are entitled to be informed as to what the State commands or forbids"); *International Harvester v. Kentucky,* 234 U.S. 216, 223, 34 S.Ct. 853, 855, 58 L.Ed. 1284 (1914).

**9.** The void-for-vagueness doctrine reflects the principle that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must nec-

essarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) (citations omitted). "The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review." *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984) (citations omitted).

In my view, vagueness inheres both in Mississippi's standards for inflicting liability and for measuring the amount of the punitive award. As to the standard for imposing liability, Mississippi bad faith refusal law is a predator lurking in the shadows to pounce on the unsuspecting. Consider this case. Our court's panel held that Reserve clearly had adequate notice that its failure to consult "all relevant medical records" and obtain expert advice before denying Eichenseer's claim, coupled with its delay in adjustment, could subject it to punishment. With all due respect, as was demonstrated in the foregoing section on Mississippi law, that is not correct. In December 1983, after Reserve had denied Eichenseer's claim, the Mississippi Supreme Court observed: "As is often the case, the court is required to apply applicable legal principles to the particular facts of a particular case. As usual, those facts are different from any other case previously considered." *Reserve Life Ins. Co. v. McGee*, 444 So.2d at 803. The supreme irony in the punishment of Reserve here is that the courts acknowledged it ultimately had an "arguable reason" to deny Eichenseer's claim. 881 F.2d at 1361.

Had there been evidence that Reserve's actions were infected by spite or ill will, this might well be a different case.[10] But the court here found no malice and punished nevertheless. It is not fundamentally fair to regulate insurance claims handling by punishing, retrospectively, conduct that was not motivated by subjective ill will.[11] As the Supreme Court put it,

> [c]ertainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce.

*Giaccio*, 382 U.S. at 403, 86 S.Ct. at 521.

The vagueness doctrine imposes another hurdle upon Mississippi's bad faith refusal law even more significant than the patent lack of foreknown standards for punishing insurers. The Supreme Court has recognized "that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to government law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247–48, 39 L.Ed.2d 605 (1974)). Our court held that in Mississippi, the fact finder is allegedly guided by certain standards in setting awards of punitive damages. Included among these are the goals of punishment and deterrence; the pecuniary ability or financial worth of the wrongdoer; the degree of the offense; the presence or absence of malice; and the public sense of justice and propriety. *See Eichenseer*, 881 F.2d at 1366; *Bankers Life & Casualty Co.*, 483 So.2d at 278 (citations omitted). To determine whether the "standards" make any sense in practice, we need only review the range of punitive damages that have been awarded under Mississippi's bad faith refusal law. *See, e.g., Independent*

---

**10.** Punitive damages are a venerable legal consequence of particularly reprehensible behavior. *Day v. Woodworth*, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1851). *See also Jeffries*, A Comment On The Constitutionality of Punitive Damages, 72 Va.L.Rev. 139 (1986). To the extent they are imposed for intentional misconduct or malice, I have no quarrel with their constitutionality. We are not here concerned with the vexing problem of multiple punitive damage awards for one tort. *See, e.g., Roginsky v. Richardson–Merrell, Inc.*, 378 F.2d 832, 839–41 (2d Cir.1967) (per Friendly, J.) But Mississippi's seminal cases have not relied on malice. The court has instead inferred a "heightened tort"

from "gross negligence or reckless disregard for the rights of others." *Aetna Casualty & Surety Co. v. Day*, 487 So.2d 830, 832 (Miss.1986). The line between negligence and gross negligence, especially in breaches of contract, is all too murky.

**11.** Of course, as Mississippi case law evolves, explanations of "bad faith refusal" will furnish sufficient guidance to put insurers on notice, following those decisions, of what they must do. But no insurer should have to predict, in advance of such case law, what actions may subject it to punishment.

*Life & Accident Ins. Co. v. Peavy*, 528 So.2d 1112, 1120 (Miss.1988) (punitive damage award of $250,000, "vastly larger than the actual damages" of $412.20); *Life Ins. Co. of Miss. v. Allen*, 518 So.2d 1189, 1194 (Miss.1987) ($20,000 punitive damage award); *National Life and Accident Ins. Co. v. Miller*, 484 So.2d 329, 338 (Miss. 1985) ($350,000 punitive damage award, actual damages of $2,500); *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d at 277–79 (Miss.1985) ($1.6 million punitive damage award, actual damage award of $20,000); *Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239 (Miss.1978) ($25,000 punitive damage award; $1,008 actual damages). This is not monopoly money, but a nearly hundred fold variation in the range of punishments assessed. Punishment there is as a result of this law, but it is punishment without moorings. As a result, "the jurors must make determinations of the crucial issue upon their own notions of what the law should be instead of what it is." *Giaccio*, 382 U.S. at 403–04, 86 S.Ct. at 521.

*Giaccio* furnishes a close analogy to the standardless discretion entrusted to the factfinder in Mississippi's cases. The statute there at issue allowed a criminal jury to award costs against the defendant, even if he was acquitted. Not only did the statute afford no standard upon which to assess costs, but the Supreme Court found no guidance in state court decisions that awarded costs for conduct which, though not unlawful, was nevertheless characterized as "reprehensible in some respect," "improper," outrageous to "morality and justice," or "misconduct of some kind as a result of which [the defendant] should be required to pay some penalty short of conviction...." *Id.* Likewise, the rubrics of punishment, deterrence and the other criteria set forth in Mississippi, while descriptive, are simply too uncertain to yield consistent results.

The arbitrariness of the awards issued by juries is not, in Mississippi's system, subject to meaningful judicial review. The state supreme court counselled that "as the jury are the sole judges of the amount which ought properly to be assessed in order to inflict adequate punishment, the courts should scrupulously avoid any undue interference with their prerogative...." *Reserve Life Ins. Co. v. McGee*, 444 So.2d at 812 (quoting earlier cases). As was noted, the state supreme court later concluded that any punitive award less than one-half of one percent of a company's net worth will not "shock the judicial conscience." The judicial hands-off policy on punitive damages assures that no unifying principle can or will emerge from the penalties inflicted upon insurance companies.

### B. *The Process That is Due*

It may be objected that if punitive damages awarded pursuant to Mississippi's bad faith refusal tort are held to violate due process, the federal courts will be asked to invade additional areas of state common law adjudication. Additionally, it is feared, federal courts will be tempted to assume state adjudicatory roles in passing upon alternatives to punitive damages. I believe these arguments mischaracterize the source of judicial activism and hide under what is in this case a false flag of federalism in counseling federal judicial restraint.

It is Mississippi's Supreme Court, not its legislature, which has undertaken to revise insurers' claims handling practice by means of retrospective punishment. One justice clearly expressed his intentions to this effect: "Again, a court has been called upon to redress grievances which could be avoided by proper state regulation of insurance company practices." *National Life and Accident Ins. Co. v. Miller*, 484 So.2d 329, 339 (Miss.1985) (Hawkins, J., concurring). In our system, the notion of "judicial lawmaking" should be oxymoronic, but it is not. The constitutional requirement that clarity and ascertainable standards must guide legal punishment may not be waived simply because the challenged law originated in courts rather than a legislature. This case is different because it involves judge-made law, but it is not immune to constitutional analysis. Thus, if a statute declared as an offense the refusal to pay an insurance claim without an arguable or reasonable basis, which refusal was attended by gross negligence or recklessness, and if the

statute then punished this offense with fines ranging from zero to millions of dollars at the sole discretion of the factfinder, I think we would not hesitate to strike it down for vagueness. *Compare Giaccio, supra.* Judicial activism by the state courts, not the federal court, creates the constitutional dilemma. Consequently, the federal court would not overstep its bounds to declare that in *this* case, the $500,000 punitive damage award is unconstitutional because it violates the prior notice requirement of due process and results from excessive discretion in the hands of the factfinder.

The remedy for Mississippi's unconstitutional means of inflicting punitive damages is as straightforward as the constitutional analysis itself. That remedy need not be prescribed by the federal court nor should it significantly interfere with the right of Mississippians to be governed by their judges. Rudimentary modifications of the Mississippi law assessing punitive damages would cure the problems of notice and undue discretion without abandoning that remedy. For instance, the state court could declare that "new rules" of bad faith refusal would have prospective effect only. *See, e.g., Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 563–64, 384 N.E.2d 353, 360–61 (1978); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512, 517 (1975) (en banc). The court could pursue a compensatory principle by allowing a prevailing plaintiff in a bad faith refusal case to recover his attorneys' fees. The court could require that punitive damages be proportional to the actual damages in the lawsuit, with some adjustment made for particularly small amounts of damage. *See, e.g., Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1377–78 (5th Cir.1982) (en banc) (extolling Texas' rule which then required proportionality) (per Johnson, J.); *Stambaugh v. International Harvester,* 106 Ill.App.3d 1, 61 Ill.Dec. 888, 435 N.E.2d 729 (1982) (rev'd on other grounds); *Galindo v. Western States Collection Co.,* 82 N.M. 149, 477 P.2d 325, 331 (1970); *Montgomery v. Tufford,* 165 Colo. 18, 437 P.2d 36, 40 (1968). Any or all of these measures would minimize the temptation by juries to play Robin Hood, would introduce consistency in the amount of punishment inflicted, and would balance the need for ascertainable standards with a disincentive to engage in "bad faith" denial of claims. Similar remedies exist in many states and have been enacted by numerous legislatures. *See, e.g.,* Ark.Stat. Ann. § 66–3238; La.Rev.Stat. Ann. § 22:658 (West Supp.1989); Tenn.Code Ann. § 56–3–105. Federal courts would not have to re-write Mississippi's bad faith refusal law in order to insist that it comply with due process.

### IV. Conclusion

One of the most unseemly features of our current legal system is its tendency to promote litigation as high-stakes gambling. A winner can gain the keys to the corporate treasury, if he has the good fortune to obtain the right lawyer, the right jury and the right forum. Punitive damages are a key feature of the abuse of the litigation process. If, as in Mississippi's bad faith refusal law, there are no clear standards to permit their avoidance by a defendant or to bring to heel the amounts awarded by a jury, this is no more tolerable than Pennsylvania's statute that allowed an *acquitted* defendant to be saddled with the costs of his own prosecution. *See Giaccio supra.* At least in that case, the costs of prosecution were limited. In the present case, they clearly are not. I dissent from the denial of rehearing *en banc.*