Patricia Stephenson EICHENSEER,
Plaintiff–Appellee,

v.

RESERVE LIFE INSURANCE COMPA-
NY, Defendant–Appellant.

No. 88–4421.

United States Court of Appeals,
Fifth Circuit.

July 11, 1991.

L.F. Sams, Jr., John S. Hill, Donna M. Barnes, Tupelo, Miss., Larry L. Simms, Gibson, Dunn & Crutcher, Washington, D.C., for defendant-appellant.

Thomas L. Kesler, Dewitt T. Hicks, Jr., Columbus, Miss., for plaintiff-appellee.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before POLITZ and JOHNSON, Circuit Judges.[1]

JOHNSON, Circuit Judge:

The instant case has bounced through the federal courts like a yoyo on a long string. Most recently, the United States Supreme Court examined this case on a writ of certiorari. The Supreme Court, —— U.S. ——, 111 S.Ct. 1298, 113 L.Ed.2d 233, vacated our prior decision, reported at 881 F.2d 1355, and remanded the case for reconsideration in light of *Pacific Mutual*

---

1. This original panel in this case included Judge Alvin B. Rubin. Because of his recent untimely death, the case is decided by a quorum. *See* 28 U.S.C. § 46(d).

*Life Insurance Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Accordingly, we revisit a controversial issue: whether a substantial punitive damages award violates the Due Process Clause of the Fourteenth Amendment. We conclude that, under the circumstances of the case, the award of punitive damages did not violate due process.

## I. FACTS AND PROCEDURAL HISTORY

A complete statement of the facts and procedural history of this case is found in this Court's prior opinion. *Eichenseer v. Reserve Life Ins. Co.,* 881 F.2d 1355 (5th Cir.1989). We will briefly summarize. On January 5, 1983, Reserve Life Insurance Company ("Reserve Life") issued a major medical insurance policy to Patricia Eichenseer ("Eichenseer"). Eighteen days after the effective date of the policy, Eichenseer was admitted to the hospital with severe abdominal pain. On the hospital admission sheet, Dr. L.R. Murphree noted that Eichenseer had experienced pain in the lower abdomen "in period for the last 2–3 years." Dr. Murphree diagnosed acute pelvic inflammatory disease and, subsequently, performed a total hysterectomy on Eichenseer.

In late February 1983 Eichenseer received medical bills that totalled $6658.35. She submitted these bills to Reserve Life for payment. After Eichenseer signed a "proof of claim" form on March 23, 1983, Reserve Life forwarded payment on a fraction of the medical bills covered under a separate insurance policy that Eichenseer's parents had purchased. Reserve Life formally denied, however, the claim that Eichenseer submitted under the major medical insurance policy she purchased in January. Reserve Life claimed that Eichenseer's acute pelvic inflammatory disease was a preexisting illness which the policy did not cover.

On June 21, 1983, Eichenseer called Reserve Life and requested an explanation. The employee who handled Eichenseer's claim, Dena Marie Brannon, revealed that she had interpreted Dr. Murphree's notes on the hospital admission sheet to suggest that Eichenseer had suffered from her illness since 1980–81. Significantly, Brannon admitted that she had not consulted either Dr. Murphree or a Reserve Life in-house physician before she reached this decision. Eichenseer called Reserve Life several more times during the following weeks, but she received no relief. On August 22, 1983, after receiving one such telephone call, a Reserve Life employee wrote Dr. Murphree a letter requesting Eichenseer's medical records. Dr. Murphree promptly forwarded these records to Reserve Life. The insurance company, however, lost the records. Two months later, despite the absence of the medical records, Reserve Life notified Eichenseer that it had again denied her claim.

Eichenseer sent Reserve Life a second set of her medical records. Reserve Life received these records on October 26, 1983, but did not acknowledge receipt until December. At that time, Dena Brannon informed Eichenseer that the insurer could not consider payment of her claim until Dr. Murphree altered the medical records to clarify the "2–3 years" notation. Dr. Murphree initially declined to alter the hospital records as requested. Convinced that such a change was not ethically permissible, he instead agreed to sign an affidavit recanting the "2–3 years" remark. Eichenseer subsequently mailed Reserve Life a notarized affidavit in which Dr. Murphree asserted that the medical records were incorrect and should have stated that his patient had suffered lower abdominal pain for "2–3 days." Reserve Life received the affidavit, but lost it in the following weeks.

On October 16, 1984, Eichenseer mailed Reserve Life a demand letter requesting either payment of the claim or an extended explanation for its denial. Six weeks later, Dena Brannon sent Eichenseer a telegram stating that the insurance company was "having difficulty in assembling the file." Later, on January 4, 1985, Reserve Life mailed a letter that reaffirmed its denial of Eichenseer's claim. Reserve Life commented in the letter that it based its decision on Dr. Murphree's failure to correct the hospital records.

Thereafter, Eichenseer filed the instant action against Reserve Life. During the course of pretrial discovery, defense counsel learned that Reserve Life had lost its copy of Dr. Murphree's affidavit. The counsel recommended that Reserve Life officials review this affidavit. They did so, and on June 16, 1986—three years and three months after her initial request for payment—Reserve Life paid Eichenseer's claim. Despite the payment of the benefits under the insurance policy, however, Eichenseer continued to pursue the instant action for extracontractual damages and punitive damages. After a bench trial, the district court awarded Eichenseer $1000 in compensatory damages and $500,000 in punitive damages.[2] Reserve Life appealed.

This Court, in its original consideration of this case, ruled that the award of punitive damages against Reserve Life was "consistent with the guarantees enumerated in the United States Constitution, as well as Mississippi law." 881 F.2d at 1356. The Court denied Reserve Life's Petition for Rehearing and Suggestion for Rehearing En Banc.[3] Reserve Life then filed a petition for writ of certiorari. The Supreme Court, after granting the petition, vacated our original decision and remanded the case for reconsideration in light of *Pacific Mutual Life Insurance Co. v. Haslip,* — U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

## II. DISCUSSION

In the present era of large damage awards, perhaps no issue has generated as much interest and controversy as the proposition that substantial punitive damages awards might violate certain guarantees of the United States Constitution. Until recently, however, the Supreme Court had offered little more than vague suggestions that large punitive damages awards might offend constitutional requirements.[4] In *Pacific Mutual Life Insurance Co. v. Haslip,* the Court finally converted these suggestions into substance: the Court recognized that, under certain circumstances, an award of punitive damages may "cross the line into the area of constitutional impropriety." 111 S.Ct. at 1046. Significantly, the Court concluded that the specific circumstances in *Haslip* did not raise constitutional concerns. *Id.*

The plaintiffs in *Haslip* purchased health insurance from Union Fidelity Life Insurance Company through its agent Lemmie L. Ruffin, Jr., who also was a licensed agent of Pacific Mutual Life Insurance Company. After several months, Union Fidelity had not received any premium payments on the health insurance. Union Fidelity sent Ruffin notices of lapsed health coverage to forward to the plaintiffs. These notices were not forwarded. The plaintiffs learned that their insurance had lapsed only after one of the plaintiffs, Cleopatra Haslip, was hospitalized and could not recover payment on her policy. The plaintiffs filed a lawsuit against Ruffin and, under a theory of respondeat superior, Pacific Mutual. They claimed that Ruffin had collected premiums from the plaintiffs, but had failed to remit these premiums to

---

**2.** The district court exercised its diversity jurisdiction. 28 U.S.C. § 1332. Accordingly, the district court, in fashioning an appropriate award of damages, was required to apply state law. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Jackson v. Johns–Mansville Sales Corp.,* 781 F.2d 394 (5th Cir.), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). In this case, it is clear that the Mississippi law of damages applies.

**3.** Four judges—Judges Gee, Jolly, Jones and Smith—dissented from the denial of rehearing en banc and joined in an opinion, authored by Judge Jones, expressing their views. *See* 894 F.2d 1414 (5th Cir.1990).

**4.** *See, e.g., Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (ruling that the Excessive Fines Clause of the Eighth Amendment "does not apply to awards of punitive damages in cases between private parties," but deferring the question whether the Due Process Clause limits the size of punitive damages awards in civil cases between private parties); *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (noting that the arguments that the imposition of punitive damages violated the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment "raise important issues which, in an appropriate setting, must be resolved," but declining to reach these issues).

Union Fidelity. A jury agreed that Ruffin had acted fraudulently and returned a verdict awarding the plaintiffs approximately $200,000 in compensatory damages, including $4000 in out-of-pocket expenses, and $840,000 in punitive damages.

■ Noting that punitive damages have long been a fixture of traditional state tort law, the Supreme Court in *Haslip* refused to conclude that punitive damages are per se unconstitutional. *Id.* 111 S.Ct. at 1043. A majority of the Court emphasized, however, that the antiquity of the practice did not insulate punitive damages from constitutional challenge.[5] The Court concluded that *in some cases* a substantial award of punitive damages might violate the Due Process Clause of the Fourteenth Amendment. Interestingly, the Court eschewed a formal due process standard:

> We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.

*Id.* at 1043. In essence, the Court in *Haslip* reasoned that the constitutionality of an award of punitive damages is a function of two practical considerations: (1) whether the circumstances of the case indicate that the award is reasonable, and (2) whether the procedure used in assessing and reviewing the award imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder. *Id.* The Court determined, in light of both considerations, that the award of punitive damages to the plaintiffs in *Haslip* was constitutional.

*The circumstances of the case indicated that the award was reasonable.* The punitive damages award in *Haslip* was more than four times the amount of the plaintiffs' compensatory damages and two hundred times the amount of the out-of-pocket expenses of plaintiff Haslip. Nonetheless, the Supreme Court observed that "[w]hile the monetary comparisons are wide and, indeed, may be close to the line," the circumstances of the case indicated that the jury's $840,000 punitive damages award did not offend constitutional sensibilities. *Id.* at 1046. In particular, the Court identified a couple of facts that supported the amount of the award in *Haslip:* (1) the conduct in question was reprehensible, and (2) society has a significant interest in discouraging insurers from similar conduct. *Id.* These facts sufficiently indicated that the punitive damages award in *Haslip* was reasonable.

*The procedure used in assessing and reviewing the award of punitive damages imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder.* The unlimited discretion to fashion an award of punitive damages invites extreme results. Accordingly, the Court in *Haslip* concluded that an award of punitive damages violates the Due Process Clause unless procedural protections adequately control the discretion of the factfinder—judge or jury—to fashion the award. *Id.* at 1043. The Court acknowledged several procedural devices that controlled the discretion of the jury in *Haslip*. First, the trial court properly explained to the jurors the deterrent and retributive purposes of punitive damages. Second, the trial court and the Alabama Supreme Court applied a series of tests to ensure that the punitive damages were reasonable in their amount and rational in light of their purpose to punish and deter wrongful conduct. The *Haslip* Court reasoned that these procedural devices imposed a "sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages." *Id.* at 1045.

■ Thus, after *Haslip*, an award of punitive damages is constitutional if the circumstances of the case indicate that the

---

**5.** Justice Scalia, concurring separately in the *Haslip* opinion, concluded that punitive damages withstand constitutional scrutiny, regardless whether they are fair or reasonable, because they existed in the common law prior to the enactment of the Fourteenth Amendment. *Haslip,* 111 S.Ct. at 1046–47 (Scalia, J., concurring).

award is reasonable and the procedure used in assessing and reviewing the award imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder. This is a fact intensive analysis. On appellate review of a punitive damages award, a court must carefully consider the nature of the wrong and the status of the parties. The touchstone of constitutionality under *Haslip* is *not* the amount of the award in the abstract. The size of an award of punitive damages and the relationship between the award and the amount of compensatory damages are relevant factors in determining whether the award is constitutional, but these factors are not dispositive. A substantial punitive damages award, even one that is several times the amount of compensatory damages, might meet due process muster in one case, and yet be constitutionally invalid in another. Mindful of these principles, we consider both aspects of the due process analysis.

### A. *Circumstances Indicating Reasonableness of Award*

[redacted] Under *Haslip,* an award of punitive damages does not meet constitutional requirements unless the circumstances of the case indicate that the award is reasonable. This condition, contrary to the assertion of Reserve Life, is not a vehicle for expansive appellate review of punitive damages awards. It creates, instead, a narrow channel for appellate review in which the focus of a reviewing court is to ensure that, *under the circumstances of the case in question,* the award of punitive damages is not grossly excessive or unreasonable.[6]

[redacted] The calculation of an appropriate amount of punitive damages is traditionally left to the unique discretion of the factfinder. Whether judge or jury, the factfinder occupies the best position to determine the amount of a punitive damages award because "the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case." *Day v. Woodworth,* 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1852). Accordingly, in reviewing the constitutionality of an award of punitive damages, a court may not explicitly or implicitly recalculate the award of damages; moreover, it may not express an opinion whether the award is too high or too low.[7] Rather, the court may only consider whether the circumstances of the case offer some support for the amount of the award. If there are *any* circumstances of probative force that support the amount of the award, then the award meets the "reasonableness" prong of the due process test in *Haslip.*

[redacted] After careful consideration, we conclude that the award of punitive damages to Eichenseer did not lack support in the record. We recognize, for instance, that Reserve Life's conduct in the instant case was particularly egregious. Although Reserve Life did not maliciously mishandle Eichenseer's claim, it nonetheless acted with reckless disregard—if not intentional disregard—for the rights of its insured.[8]

6. The Due Process Clause does not prohibit large damage awards—or even substantial damage awards. Rather, the Due Process Clause forbids damage awards that are "grossly excessive," *Waters-Pierce Oil Co. v. Texas,* 212 U.S. 86, 111, 29 S.Ct. 220, 227, 53 L.Ed. 417 (1909), or "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S.R. Co. v. Williams,* 251 U.S. 63, 66–67, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919).

7. Whether an award of punitive damages is too high or too low is a question of state law. Some states require that appellate courts rigorously examine punitive damages awards to ensure that they are "appropriate;" other states do not. *Compare Central Alabama Electric Cooperative v. Tapley,* 546 So.2d 371, 377–78 (Ala.1989) (cited in *Haslip*) *with Bankers Life & Cas. Co. v. Crenshaw,* 483 So.2d 254, 278 (Miss.1985).

If requested to do so, federal appellate courts in diversity cases may review an award of punitive damages under state law on appeal. In the instant case, Reserve Life has not alleged that the award of punitive damages against it violates the Mississippi law of damages, and therefore, we do not address this issue. We address only the distinct and separate issue whether the award of punitive damages in this case violates due process.

8. Reserve Life argues that the imposition of punitive damages against negligent or reckless conduct constitutes a per se violation of due process. First of all, even if this were true, it

Its actions were far more offensive than mere incompetent recordkeeping or clerical error. Reserve Life refused to initiate even the most cursory investigation of Eichenseer's claim. The insurer failed to submit the claim to its in-house medical personnel for review, and in fact, it declined even to interview Eichenseer or her doctor. Understandably distressed, Eichenseer attempted to spur Reserve Life to investigate her claim more thoroughly. Eichenseer wrote Reserve Life several letters urging that the insurer provide specific reasons for the denial of her claim, and on her own initiative, Eichenseer submitted documents that indicated her claim was valid. Reserve Life, however, rebuffed Eichenseer's entreaties and lost the documents she submitted—often under suspicious circumstances.[9] Reserve Life's cavalier handling of Eichenseer's claim is an unfortunate example of an insurer's desire to save money at the expense of its insureds. A mere slap on the wrist is inadequate to punish such conduct. Thus, the egregious nature of Reserve Life's conduct is a significant factor that supports the $500,000 award of punitive damages to Eichenseer.

Another circumstance that indicates that the punitive damages award in this case is reasonable is the corporate size of Reserve Life. The net worth of Reserve Life is $157,000,000. The district court reasoned, in part on the basis of this net worth, that a $500,000 punitive damages award was necessary to deter the insurer from future misconduct. Rejecting an award that would have been closer in proportion with the plaintiff's compensatory damages, the district court recognized that a small award of punitive damages would have had little deterrent effect against a corporation of Reserve Life's magnitude. Reserve Life could have easily absorbed a $1000 or $10,000 punitive damages award as no more than a cost of business, and yet still have handsomely profited from its actions since most claims denials are not challenged in court. A $500,000 award, on the other hand, would "get the attention of

would not benefit Reserve Life. The district court held that Reserve Life acted without *malice,* but did not conclude that Reserve Life acted without *intent.* On the contrary, the district court concluded that, while Reserve Life did not necessarily intend to mishandle Eichenseer's claim, it deliberately refused to investigate her account of the facts because it intended "to save money by denying a claim." *Eichenseer v. Reserve Life Ins. Co.,* 682 F.Supp. 1355, 1373 (N.D. Miss.1988). Second, even if Reserve Life's argument were relevant, it finds no support in *Haslip.* Indeed, the Court in *Haslip* expressly rejected the contention that there is a bright line between the constitutionally acceptable and constitutionally unacceptable. 111 S.Ct. at 1043. The constitutionality of punitive damages is measured on a case-by-case basis. The fact that the defendant's conduct was not intentional or malicious is an item that a reviewing court should consider in determining whether the circumstances of a case indicate that an award of punitive damages is reasonable. However, the fact that the defendant's conduct was neither intentional nor malicious does not in itself require a conclusion that the award is unconstitutional.

9. Reserve Life complains that the district court imposed punitive damages on the basis of a standard of conduct—which requires that an insurer make reasonable efforts to obtain all available medical information relevant to the claim—that the Mississippi courts established after Reserve Life resolved Eichenseer's claim. We disagree. The district court did not impose punitive damages against Reserve Life solely because the insurer failed to make reasonable efforts to obtain all available medical information. As the district court observed, Reserve Life also (1) failed to interview the plaintiff or her doctor, (2) failed to submit the matter to in-house medical personnel for review, and (3) failed to reevaluate its position. 682 F.Supp. at 1371–72.

Even assuming, *arguendo,* that the district court imposed punitive damages against Reserve Life because it failed to make reasonable efforts to obtain medical information, we cannot conclude that the imposition of punitive damages in this case violated due process. The crux of Reserve Life's complaint is that it did not receive adequate notice that the district court could—and would—impose punitive damages. This argument is specious. In a 1983 case involving this same defendant, Reserve Life, a Mississippi state court awarded substantial punitive damages against the insurer, in part because it failed to conduct a reasonable investigation of the medical history of its insured. The Mississippi Supreme Court affirmed this result. *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803 (Miss.1983). While perhaps this earlier case is factually distinguishable from the instant case, Reserve Life had more than adequate notice that a court might award punitive damages to punish and deter the failure to investigate a claim reasonably.

Reserve Life." *Eichenseer v. Reserve Life Ins. Co.*, 682 F.Supp. 1355, 1373 (N.D.Miss. 1988).[10] The court's consideration of the deterrent effect of its award was proper. One of the fundamental purposes of punitive damages is to deter a wrongdoer from future misconduct. While the Due Process Clause requires that punitive damages not be grossly excessive, it does not require that punitive damages be ineffectual and impotent. The corporate size of Reserve Life is another factor that supports the award of punitive damages against it.

■ In addition, and perhaps most importantly, this case is not the first instance in which a court has assessed a punitive damages award against Reserve Life. As previously recognized in footnote 9, a Mississippi state trial court in 1983 assessed a $150,000 punitive damages award against Reserve Life on the basis of conduct remarkably similar to the egregious conduct in the instant case. *See Reserve Life Ins. Co. v. McGee*, 444 So.2d 803 (Miss.1983) (Reserve Life failed to investigate the medical history of the insured before it issued a policy and then denied coverage once the insured submitted a claim under the policy). This $150,000 award appears to have had little effect on the manner in which Reserve Life handled claims. If a lesser and comparatively small punitive damages award does not deter wrongful conduct, then a court may reason, as a matter of common sense, that a larger award is necessary in subsequent cases. The district court concluded that, because the earlier $150,000 award had little deterrent effect, it should impose a larger $500,000 punitive damages award. This conclusion finds support in the record.

We need not, and indeed we cannot, express an opinion whether the award in this case is too large or too small. The award may or may not be excessive, but this is a matter of state law that is not in issue here.[11] We conclude simply that the record

in this case provides sufficient support for the award of punitive damages against Reserve Life. The first of the two practical considerations in *Haslip*, therefore, does not suggest that the award against Reserve Life offended the requirements of due process.

Reserve Life misconceives the deferential nature of the due process standard in *Haslip*. It argues that the $500,000 punitive damages award is unconstitutional on its face because it exceeds the amount of the plaintiff's compensatory damages by a ratio of 500 to 1. The insurer suggests that, because the $840,000 award in *Haslip* was "close" to the line of constitutional impropriety even though it was four times the amount of the compensatory damages, the award in the instant case is well beyond the line of constitutional impropriety. The Court in *Haslip*, however, expressly rejected a "mathematical bright line" test of constitutionality. 111 S.Ct. at 1043.[12] Perhaps in some cases—even in many cases— an award of punitive damages that is five hundred times the amount of the compensatory damages will violate due process. This is not such a case. Sufficient circumstances indicate that the award of punitive damages against Reserve Life was well reasoned and, indeed, reasonable.

**B.** *Procedural Protection*

■ The *Haslip* decision states that an award of punitive damages violates due process unless the procedure used in assessing and reviewing the award imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder. Although the amount of an award of punitive damages is left to the unique discretion of the factfinder, this discretion is not absolute. An award of punitive damages is unconstitutional unless reasonable procedural safeguards control the discretion of the factfinder. Examples of effective procedural safeguards include, but are not lim-

---

**10.** As it was, the $500,000 award in this case was less than one third of one percent of Reserve Life's net worth.

**11.** *See supra* note 7.

**12.** It is far more appropriate for the Mississippi legislature to set forth exact proportionality guidelines for punitive damages in Mississippi. *See Eichenseer*, 881 F.2d at 1267 n. 5.

ited to, the following: comprehensive jury instructions that explain the nature of punitive damages, state laws that limit the amount or applicability of punitive damages, and rigorous systems of appellate review of punitive damages.

■ Like the reasonableness aspect of the due process analysis, the procedural protection adequate to support the constitutionality of a punitive damages award varies with the circumstances. A smaller punitive damages award might require fewer procedural safeguards than a larger award. Comprehensive jury instructions, for instance, may afford sufficient procedural protection in a case in which the jury recommends a small award of punitive damages, but not in a case in which the jury recommends a large award. Whether an award is large or small, however, the procedural protection need not be exhaustive. As long as there is some meaningful procedural assurance that the amount of the award is not an impulsive reaction to the wrongful conduct of the defendant, the award survives the procedural protection aspect of the due process analysis in *Haslip*. In the instant case, we conclude that the procedure used in assessing and reviewing the amount of the punitive damages award was constitutionally sufficient.

■ Mississippi law limits the amount of punitive damages that a trial court can impose against a defendant. The trial court does not possess unbridled discretion to fashion the amount of a punitive damages award. Rather, under Mississippi law, the trial court determines an appropriate amount of damages with reference to the following factors:

(1) Such amount as is necessary for the punishment of the wrongdoing of the defendant and deterring defendant from similar conduct in the future;

(2) Such amount as is reasonably necessary to make an example of the defendant so that others may be deterred from the commission of similar offenses;

(3) The pecuniary ability or financial worth of the defendant.

*Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254, 278 (Miss.1985). The court should also consider the degree of the offense, the presence or absence of malice, the motive behind the actions, the injury intended, and the public sense of justice and propriety. *See Mutual Life Ins. Co. v. Estate of Wesson*, 517 So.2d 521, 532 (Miss. 1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988).

Without question, these criteria leave the trial court significant discretion in its determination of punitive damages. But this discretion is not unlimited. It is confined to the policies of deterrence and retribution. *Cf. Haslip*, 111 S.Ct. at 1044 (concluding that instructions which limit jury discretion to the policies of deterrence and retribution are adequate). Perhaps in some cases trial courts might ignore, or at least overlook, the criteria that the Mississippi courts have established to guide discretion in the imposition of punitive damages. The district court in this case, however, did not. In an exhaustive opinion, the district court carefully examined the deterrent and retributive effects of its award of punitive damages. The court tailored its award to reflect the least severe amount adequate to serve the policies of deterrence and retribution.

This Court concludes that, under the circumstances of this case, these criteria governing the proper assessment of the amount of punitive damages imposed a meaningful and definite constraint on the discretion of the district court. We emphasize that a significant factor in this conclusion is the fact that the parties tried their case before the court, rather than a jury.[13] In bench trials, the judge—sitting as factfinder—must explain the conditions that require a particular award of punitive damages. Thus, a judge, unlike a jury, must justify the amount of punitive damages imposed against the defendant. Under the

---

13. We do not suggest that the fact that this case was a bench trial in itself requires a conclusion that the award of punitive damages against Reserve Life was constitutional. This fact is only one of many circumstances that persuade us *in this case* that the award satisfies the requirements of due process.

circumstances of the instant case, this requirement was an important procedural safeguard. The judge in this case was familiar with the complicated legal concepts that pervade the Mississippi law governing punitive damages, and he applied these concepts with due care.

Reserve Life argues that the procedure used in assessing and reviewing the award of punitive damages was inadequate because appellate review of punitive damages under Mississippi law is narrow. Certainly, the standard of appellate review in Mississippi is more forgiving than the Alabama standard that the Supreme Court approved in *Haslip*. Unlike the Alabama appellate courts, which apply a series of substantive standards to determine whether an award of punitive damages is excessive, an appellate court in Mississippi will set aside a punitive damages award only if "it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience." *Crenshaw*, 483 So.2d at 278. Nonetheless, in the instant case, we cannot conclude that the deferential nature of the standard of appellate review in Mississippi requires reversal.

Again, Reserve Life misunderstands the fact intensive nature of the due process analysis articulated in *Haslip*. The fact that the Mississippi appellate courts apply a deferential standard of review might be a significant factor in a case, for example, in which the trial court did not instruct the jury concerning the appropriate criteria for assessing an award of punitive damages. In such a case, the deferential standard of review might not act as an adequate check on the discretion that the jury would exercise in assessing damages. In the instant case, however, other procedural safeguards have controlled the discretion of the factfinder. The district court completed a rigorous examination of the appropriateness of the punitive damages it imposed against Reserve Life, and in fact, the court applied many of the substantive standards that the Supreme Court approved in its review of the Alabama procedural process in *Haslip:* the relationship between the punitive dam-

ages award and the harm that occurred, the reprehensibility of the defendant's conduct, the "financial position" of the defendant, the costs of litigation, etc. *Haslip*, 111 S.Ct. at 1045. We conclude that, under the circumstances of the instant case, the procedure used in assessing and reviewing the award of punitive damages imposed a definite and meaningful constraint on the discretion of the district court.

## III. CONCLUSION

This Court determines, after reconsideration in light of *Pacific Mutual Life Insurance Co. v. Haslip*, that the $500,000 punitive damages award against Reserve Life does not violate the Due Process Clause of the United States Constitution. Once again, we affirm the judgment of the district court.

AFFIRMED.